UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANGELA GAYLE MEADOR, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | No. 3:10-0904 |
| ) | Judge Haynes/Bryant |
| ) | |
| NASHVILLE SHORES HOLDINGS, ) | |
| LLC, D/B/A NASHVILLE SHORES, ) | |
| ) | |
|     Defendant. ) | |

## ~~PROPOSED~~ INITIAL CASE MANAGEMENT ORDER

**I.     Jurisdiction and Venue.**

Jurisdiction and venue is in dispute in this matter and is currently pending before the Court.

**II.    Parties' Theories of the Case**

**A.    Plaintiff's Theory of the Case.**

The Plaintiff was employed by Defendant, Nashville Shores, as a Lifeguard Supervisor, and in that capacity, Plaintiff was responsible for day-to-day supervision of a team of Lifeguards who worked at the water park pools and beach. Plaintiff worked for Nashville Shores for three consecutive summers from 2007-2010 until she was terminated from her position on June 11, 2010.

At the end of the 2009 summer season, new management purchased Nashville Shores and reorganized the entity. A new management team was put in place for the start of the summer 2010 season. The new management included, Rick McCurley, General Manager, Adam Bennett,

Operations Director, Steven Disser, Aquatics Manager, Kimberly Potts, Assistant Aquatics Manager and Jonathon Ginn, Human Resources.

Plaintiff would state that the new management team created a hostile work environment in which women were degraded, humiliated and harassed on a constant basis. Bennett and Disser had discussed openly that they wanted to install a stripper's pole in Bennett's office so that the women could entertain them.

On April 26, 2010, while Plaintiff was in Adam Bennett's office, Mr. Bennett began comparing the size of Plaintiff's breasts to that of Kimberly Potts. Bennett began to describe in detail the size and shape of Plaintiff's breasts. Bennett asserted that while the two women were the same height, Plaintiff's breasts were so much larger. Plaintiff was hurt and humiliated by Bennett's comment.

On May 1, 2010, because of the Nashville flood, Steven Disser, Adam Bennett, Kimberly Potts, Rebekah Headrick and Plaintiff all shared an office. On that date, with all of the preceding present in the room, Adam Bennett told Plaintiff to contact the lifeguards to come to work to assist with the cleanup. Bennett specified that she should call only those over eighteen years of age and no "girls" should be called in. Bennett stated specifically "only people with a "dick" can handle this type of work." This statement embarrassed Plaintiff very much and to her surprise Steven Disser responded by laughing, in effect concurring with the remarks. Disser and Bennett then made several statements that there would be "no vaginas" coming to help clean.

Plaintiff would further state that Bennett and Disser continued the harassment and degradation of Plaintiff and the other women workers at Nashville Shores. Finally on May 17, 2010, Plaintiff and Kimberly Potts approached Rick McCurley, General Manager of Nashville Shores, about their concerns. Plaintiff and Potts relayed the explicit sexually related incidents,

and expressed that they were uncomfortable with the work environment, and pervasive sexual comments and innuendos. Plaintiff and Potts further expressed concern that by speaking directly with Mr. McCurley that Bennet and Disser might retaliate against them. McCurley assured Plaintiff and Potts there would be no retaliation.

The next morning when Plaintiff returned to work, Bennett pulled his truck up to Plaintiff in the parking lot, got out, slammed the door and yelled at Plaintiff "I was told what you did and I now am going to get you out of here." From that point on, Plaintiff was subject to escalated verbal and mental abuse.

On May 28, 2010, paychecks were issued incorrectly. Plaintiff was paid for only four hours when she had worked ninety plus hours. When Plaintiff brought the mistake to Ginn, he responded that many employees had been affected by the mistake in payroll, and he had issued corrections for many employees, but Plaintiff would have to wait until the next pay period. Plaintiff then spoke with Venita Fraze, Accounting Manager, who quickly corrected the problem and issued Plaintiff a corrected check. That same afternoon Ginn came to the deck of the wave pool where Plaintiff was working and said to her that she was a "stupid bitch for telling on him."

On June 11, 2010, Steven Disser called Plaintiff and Kimberly Potts into his office and terminated Plaintiff. Disser stated that he had decided to terminate Plaintiff because she had gone to McCurley, the General Manager, to complain about the sexual harassment. Disser further stated that her reporting of the harassment put Disser, Ginn and Bennett's job in jeopardy.

One week later, Kimberly Potts was forced to resign.

Plaintiff would state that she was retaliated against and terminated for reporting sexual harassment in the workplace.

The Defendant, Nashville Shores Holdings, LLC d/b/a Nashville Shores, is responsible for all the actions of Mr. Rick McCurley, General Manager, under the doctrine of *respondeat superior*.

The Defendant, Nashville Shores Holdings, LLC d/b/a Nashville Shores, is responsible for all the actions of Mr. Steven Disser, Aquatics Manager, under the doctrine of *respondeat superior*.

The Defendant, Nashville Shores Holdings, LLC d/b/a Nashville Shores, is responsible for all the actions of Mr. Adam Bennett, Operations Director, under the doctrine of *respondeat superior*.

The Defendant, Nashville Shores Holdings, LLC d/b/a Nashville Shores, is responsible for all the actions of Mr. Jonathon Ginn, Human Resource Representative, under the doctrine of *respondeat superior*.

Plaintiff would state that Defendant acted in contravention of T.C.A. §42-21-101 of the Tennessee Human Rights Act for sexual harassment, creating a hostile work environment and retaliation.

Plaintiff would further state that she was retaliated against and terminated for refusing to remain silent about the sexual harassment engaged in by Steven Disser, Adam Bennett and Jonathon Ginn of Defendant in violation of T.C.A. §50-1-304, the Tennessee Whistleblower Act.

Further, Plaintiff would state that the Defendant's actions in firing her when she reported the sexual harassment and her refusal to remain silent about illegal activities violated the common law of the State of Tennessee proscribing retaliatory discharge.

B.  **Defendant's Theory of the Case**

Defendant Nashville Shores Holdings, LLC denies that Plaintiff was subjected to severe and pervasive conduct that would constitute a hostile work environment, as necessary to support a claim of actionable sexual harassment under Title VII or the Tennessee Human Rights Act. Defendant further denies that Plaintiff reported any alleged sexual harassment or otherwise refused to remain silent about illegal activities, or that any such reports were a factor in its reason to end her employment. Therefore, Defendant did not retaliate against Plaintiff in violation of the Tennessee Whistleblower Act or Tennessee common law.

III.  **Schedule of Pretrial Proceedings**

A.  Rule 26 (a) (1) Disclosure

The parties shall make their Rule 26 (a) (1) (A) through (E) disclosures within (30) days from the date of the initial case management conference.

B.  Meeting of Counsel and Parties to Discuss Settlement Prospects

Ninety (90) days from the date of the initial case management conference, counsel and clients are required to have a face-to-face meeting to discuss whether this case can be resolved without further discovery proceedings. If a party, other than a natural person, is involved in this litigation, a representative who has the authority to settle shall attend this meeting on behalf of that party. After the meeting is conducted, counsel shall prepare a report and file it with the Court reflecting that the parties met and that the parties made a good faith effort to evaluate the resolution of this case. This report should also include whether the parties believed that one of the Alternative Dispute Resolution ("ADR") procedures under the Local Rules would further assist the parties in resolving this matter.

C.  Other Pretrial Discovery Matters

As determined at the case management conference on November 29, 2010, this action is set for a jury trial on March 13, 2012, at 9:00 a.m. If this action is to be settled, the Law Clerk shall be notified by noon on Friday, March 9, 2012. If the settlement is reached thereafter resulting in the non-utilization of jurors, the costs of summoning the jurors may be taxed to the parties dependent upon the circumstances.

A pretrial conference shall be held February 27, 2012, at 3:00 p.m. A proposed pretrial order shall be submitted at the pretrial conference.

All discovery shall be completed by the close of business on Friday, September 30, 2011. All written discovery shall be submitted in sufficient time so that the response shall be in hand by Friday, September 30, 2011.  All discovery related motions shall be filed by the close of business on Friday, October 7, 2011.  No motions related to discovery or for a protective order shall be filed until a discovery/protective order dispute conference has taken place and the attorneys of record shall attend and meet, face-to-face, in an effort to resolve the dispute and a jointly signed discovery/protective order dispute statement is submitted setting forth precisely the remaining issues in dispute and the reasons why those issues remain unresolved.

All dispositive motions[1] and <u>Daubert</u> motions shall be filed by the close of business on Friday, October 28, 2011, and any response thereto shall be filed by the close of business on Monday, November 28, 2011. Any reply shall be filed by the close of business on Tuesday, December 13, 2011.[2]

Any motion to amend the pleadings or joint parties shall be filed in sufficient time to permit any discovery necessary because of the proposed amendment to be obtained within the

---

[1] No memorandum in support of or in opposition to any motion shall exceed twenty (20) pages. No reply shall be filed to any response unless invited by the Court.

[2] Strict compliance is required to Rule 56.01, Local Rules of Court, relating to motions for summary judgment.

time for discovery. No amendments will be allowed if to do so will result in a delay in the disposition of the action by requiring an extension of the discovery deadline.

There shall be no stay of discovery pending disposition of any motions.

Interrogatories pursuant to Rule 33, Federal Rules of Civil Procedure, shall be limited to sixty (60) such interrogatories. Subparts of a question shall be counted as additional questions for purposes of the overall number. In all other respects, Rule 33.01, Local Rules of Court, shall govern.

By the close of business on Thursday, September 1, 2011, the plaintiff shall declare to the defendants (not to file with the Court) the identity of his expert witnesses and provide all the information specified in Rule 26 (a) (2) (B).

By the close of business on Monday, October 3, 2011, the defendants shall declare to the plaintiff (not to file with the Court) the identity of their expert witnesses and provide all the information specified in rule 26 (a) (2) (B).

Any supplements to expert reports shall be filed by the close of business on Tuesday, November 2, 2011. There shall not be any rebuttal expert witnesses.

To reduce the needless expenditure of time and expense, there shall not be any discovery depositions taken of expert witnesses. A party, may, however, serve contention interrogatories and requests for admissions upon another party's expert. If these discovery methods prove ineffective, a party may move to take the deposition of the expert. In a diversity action, a treating physician is considered a fact witness unless the physician expresses opinions beyond the physician's actual treatment of the party.

The expert witness report required by Rule 26 (a) (2) (B), Federal Rules of Civil Procedure, is considered to be the expert's direct examination testimony at trial. If an expert

expects to expound his or her testimony beyond the wording of the expert's report, the party calling the expert shall inform the opposing party with the specifics of that expounding testimony at least 15 days prior to the dispositive motion deadline.

These rules on experts are to ensure full compliance with Rule 26 (a) (2); to enable the parties to evaluate any Daubert challenges prior to filing dispositive motions; to avoid conflicts with the experts' schedules; and to avoid the costs of expert depositions.

Local Rule 39 (c) (6) (c) relating to expert witnesses shall apply in this action, and strict compliance is required.

It is so **ORDERED**.

*s/ John S. Bryant*
JOHN S. BRYANT
United States Magistrate Judge

**APPROVED FOR ENTRY**:

s/Frank J. Steiner
Frank J. Steiner, #26920
Steiner & Steiner Law Firm
613 Woodland Street
Nashville, TN 37206
(615) 244-5063
*Attorney for Plaintiff, Angela Gayle Meador*

s/John Park w/permission
Mark W. Peters, #018422
John Park, #025623
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219-1760
(615) 244-6380
(615) 244-6804
*Attorneys for Defendant, Nashville Shores Holdings, LLC, d/b/a Nashville Shores*